All right, this is People v. Beasley and the appellate, Mr. Kimmel, and the appellee, Mr. O'Neill. You may proceed. May it please the Court. Counsel, my name is Darren Kimmel, and on behalf of the Office of the State Appellate Defender, I represent the appellant, Alvin Beasley. The jury here should have had the option of finding the defendant guilty of involuntary manslaughter. Those are the words of the Illinois Supreme Court in People v. DiVincenzo. If this Court agrees that some evidence was presented at trial that, if believed by the jury, would support a finding of recklessness and involuntary manslaughter, then it, too, must reverse and remand for a new trial because, quote, it is the function of the jury to evaluate the credibility of the witnesses and to make inferences based on the evidence presented. There were two pieces of evidence in this case that, if believed by a jury, would support involuntary manslaughter. First, Mr. Beasley testified that his gun accidentally went off. He didn't intentionally aim or fire the weapon, and it only fired one time. Second, Ms. Monica McCoy acknowledged that she told the police the day the event occurred that, at the moment the gun went off, it did not look like Mr. Beasley was pointing it at anyone in particular. Now, the standard here is simple. Even very slight evidence that, if believed by a jury, and I'm going to keep repeating that phrase because it's the key phrase to remember here, even very slight evidence that could support involuntary manslaughter requires jury instruction. And a trial court that refuses to give an instruction in that situation abuses its discretion. This is a bit strange because, normally, the abuse of discretion standard presents a real obstacle on appeal. But because the very slight evidence standard that governs the trial court is so restrictive, the amount of discretion that a trial court enjoys is extremely limited. And that, in turn, makes it easy to demonstrate abuse of discretion, just like in DiVincenzo. And that case controls here. Now, Mr. Beasley went on to testify that he was also afraid of the crowd, and when he was asked how his gun could have discharged accidentally, he hypothesized that it could have been a reaction based on the fact that he was afraid. He testified that he'd been shot at in the past by people who were screaming at them that they were going to kill him, and this was on his mind. He's surrounded by an angry crowd of about 30 people, and six of them start coming forward. And he testifies that, yeah, he was afraid of the crowd. One way to synthesize these two pieces of his testimony, these two strains, to interpret them together, is that Mr. Beasley flinched. He was tense, he was afraid, he had his finger on the trigger, and he was startled when the victim made a sudden movement for his waistband. That's one interpretation that I've argued for in the briefs. Now, that's the only way to interpret this testimony without ignoring part of it, without making a credibility determination. That is supposed to be the jury's job. To find that Mr. Beasley intentionally fired the gun, which is a factual issue that was in dispute here, whether he intentionally fired the gun, to find that on this testimony, a fact finder would need to ignore his statements. Repeatedly, through direct exam and on cross-examination, he repeatedly said that the gun just went off. That's his testimony. It's the job, it's the function of the jury to make credibility assessments of the witness's testimony and to draw factual inferences from that evidence. It's not the job of the trial judge in determining whether a lesser-included jury instruction should be given. It's not the trial judge's job to make those determinations up front. The trial judge is the gatekeeper of what questions should be asked of the jury. The jury can only answer the questions that are actually put to it. And in this case, the trial court abused its discretion by stepping in and making either credibility determinations or drawing factual inferences, saying that later testimony ruled out earlier testimony. And that is not the prerogative. That is not within the power of the trial court in this situation. That is the job of the jury. Now, an instruction on involuntary manslaughter must be given even if the evidence that could support it is inconsistent with the defendant's own testimony. That's the holding of the Illinois Supreme Court in People v. Everett. So even if the two threads of Mr. Beasley's testimony were inconsistent with each other, and that's not clear on the record that they were, that itself is a factual determination that should have gone to the jury. But even if we assume for the sake of argument that as a matter of law they were somehow inconsistent, that question still goes to the jury. That instruction should still be given. Well, you cite Jackson to us. And Jackson uses slightly different language. And that is an instruction on lesser offense is justified when there is some credible evidence. Well, that suggests there is a, there's got to be a hurdle, some credible evidence. And then you can argue about, well, first of all, you get the question that the judge has to be evaluating, or that statement is totally inaccurate. So if he's evaluating, then whatever testimonies there have been, there has been, however slight of this, he's looking at it. And there are cases that say just because the defense says I didn't mean to do it, that's not enough. Reading Jackson, it does sound that way. And I'll grant you, Your Honor, that word credible seems a bit strange. Well, there are other cases, though, that talk about a threshold or a hurdle. True. You've got to, yeah, it says some, slight, but at all, some. So what's some? That's... It's odd, Your Honor, and I'll grant you, it does seem a bit confusing at first. The Supreme Court in a number of cases, though, Diev and Schenzo, People v. Everett, People v. Cascio, makes it clear that the standard is if believed by the jury. So the word there, credible, that's, it's, that has to be taken in the light most favorable to the defendant. If a rational jury could find it credible, and that's what credible means there, it's within the realm of possibility. It's not, as the State has argued in its brief, is it plausible that this happened. That's not the standard that applies here, and those Supreme Court cases make that readily clear. The problem is there are a number of factual situations, like what happened in Jackson, where it doesn't matter what the defendant said. In Jackson, there were two shooters, they passed the same gun back and forth, they fired about seven shots, I believe, at a victim. And that was all admitted. They admitted that they fired those shots at the victim. At that point, no, no, that was in dispute. At that point, those two men are already guilty of first-degree murder. The defendant, in addition to that, said, I didn't mean to kill him, I didn't mean to hurt him, I was just trying to scare him. You've already crossed the threshold of first-degree murder. It's irrelevant what you were thinking while you were doing it. That's a very different situation from what happened here, where it was in dispute whether Mr. Beasley intentionally fired the gun. And there's two cases that interpret Jackson on that exact question, when there's a dispute over whether it was intentional or not. That's People v. Luna out of the First District, a fairly recent case, and also People v. Washington that was in 2010 out of the First District. Luna was a knife swing where the assailant stabbed or swiped at the victim. And again, it was not in dispute that that was an intentional swing, but the defendant argued that, I didn't mean to hurt him, I didn't mean to kill him. Just by purposely swinging that knife, you've already committed first-degree murder if the person dies. That wasn't in dispute, and Luna makes clear that, where you admit that you purposely swing the knife, you purposely fire the gun, if a person dies because of that, and you were aiming at the person at the time, that was all intentional, it doesn't matter what you were thinking while you were doing it, you've committed first-degree murder. This is a very different case. Washington was similarly a purposeful firing of a gun into a crowd. That wasn't in dispute. At that point, you've already committed first-degree murder. That puts into context the statements of this Court in Jackson, saying that it can't just be a mere factual allegation if you've already committed first-degree murder. Jackson also states, just a paragraph or so before the statement that we've been discussing, Your Honor, that the Court can't just ignore the testimony of a defendant simply because he's the defendant. A defendant is the only one who's able to present evidence, direct evidence, on his mens rea. And that's the only thing that's at issue in this case, is the mens rea of Mr. Beasley. His testimony is direct evidence on his mens rea. Everything else is circumstantial evidence. And the circumstantial evidence doesn't completely rule out the possibility that the jury could have found his testimony credible. And that's the closing argument of the prosecutor. After the trial judge has made this determination and said, No, you can't have this instruction, the prosecutor goes in front of the jury and argues, Mr. Beasley gave two actual versions. Number one was, the next thing I knew, the gun went off. The second version was, I was in fear for my life because I had been shot at before. So as the finders of the facts in this case, you get to decide whether you believe one, both, or neither of those statements of him. That's the prosecutor's closing argument. There were two threads in the testimony. If the jury had believed the first one, that the gun just went off, they should have found him guilty of involuntary manslaughter. But that question had already been taken away from the jury. They didn't have that option. If they believed both of the statements, they still should have found him guilty of involuntary manslaughter. That's the holding of People v. Tarpley by this court. Slightly older case. Tarpley stands for the idea that just pointing a gun, a loaded weapon, at another human being is a reckless act. Whatever happens after that, if you don't potentially fire the gun, it's a reckless act. If the person dies as a result of that, that's involuntary manslaughter. How does the fact that Darion was shot in the back play into this? It's definitely an odd fact, Your Honor. People v. DiVincenzo squarely controls on that point as well, though. DiVincenzo was a physical beating instead of a shooting, but there was expert medical testimony that the victim could have been kicked in the head three times while he was lying down. And the defendant testified the opposite, that he hadn't kicked the victim in the head. And the Illinois Supreme Court said that where there is a dispute, even though one side of the dispute is based on expert medical testimony, and the other side is the defendant's testimony, that question still has to go to the jury. Now, it's not quite as dispositive as it may first seem, the fact that he was shot in the back. First of all, the medical examiner testified, he just testified to the entry and exit points, which are in the back of the upper shoulder and the front of the chest. He testified that there was a diagonal path through the body. And it was clear that Darion was reaching down towards his waist at the moment the shot went off. If he was turned just to the side, reaching down, that path would go right through his body that way. But it's certainly within the realm of possibility. And that's all that's required for this question to be submitted to the jury in the form of a lesser included jury instruction. The trial court, in its analysis, drew a factual inference. What it described a reasonable factual inference based, as Your Honor mentioned, on that medical testimony on page 376 of the record. The reasonable inference would be that he was shot in the chest. And, of course, the evidence of his eviction was shot actually in the back. Again, that's not the job of the trial court at this stage of the proceedings. Reasonable inferences are the province of the jury to draw in coming to a verdict in the case. The trial court is charged with determining what the evidence could possibly support. How readily did the court give the second-degree murder instruction? It seemed almost without discussion, Your Honor. It's kind of an odd aspect of the case. It seems like the court had already decided. And actually, the parties didn't really argue with that much. The prosecutor said it shouldn't be given. And defense counsel mostly focused on the involuntary manslaughter instruction. So it's a bit of an odd wrinkle. But there wasn't much discussion of that. Now, People v. Everett makes clear that if the evidence could support, if the testimony could support either instruction, second-degree murder, which is unjustified belief in self-defense, or involuntary manslaughter, even though those are different mens reas that are legally consistent, if the evidence could support either one, both instructions have to be given. That's the law of the land in Illinois. The trial court either made a credibility assessment about part of Mr. Beasley's testimony and rejected it, or made a legal assessment that is at odds with that holding of People v. Everett, that if the evidence could support either instruction, both have to be given. On either of these bases, this court has to reverse the lower court.  For the lesser included jury instruction rule, is that it provides an important third option for the jury. That if a jury believes the defendant is probably guilty of something, it gives them a fallback option. And that's what was at issue in this case. There were clear credibility issues with a lot of the state's witnesses, the party-goers, they'd been drinking, they gave very different accounts of testimony. And the jury clearly believed in Mr. Beasley's testimony to a certain extent, his credibility to a certain extent, because they didn't find him guilty of first degree murder. It's entirely possible they would have found him guilty of a lesser included offense of involuntary manslaughter. But regardless of whether that is likely, it was within the realm of possibility based on his testimony. And if the jury believed his testimony, they should have found him guilty of involuntary manslaughter. On that basis, the trial court should have given the instruction. Now, we haven't discussed Ms. McCoy's testimony. That was also an issue of the trial court deciding what her testimony meant, making a credibility assessment, making a factual inference based on her testimony. And the trial court misdescribes her testimony. The trial court states that her testimony was not what she saw, it was just what she thought happened. It doesn't go to the intent or act of the defendant, that was just her own thought and not what she observed or not what actually happened. And she did make statements that went along those lines. But the key statement she made was acknowledging on impeachment by defense counsel that she had told the police that at the moment the gun fired, it didn't look like Mr. Beasley was pointing it at anyone in particular. That's the exact opposite of the trial court's assessment of Ms. McCoy's testimony. That should have been the role of the trial court at that point, and Ms. McCoy's testimony could certainly buttress Mr. Beasley's testimony that the gun accidentally went off. For all these reasons, this court should reverse the verdict of the lower court and remain for a new trial. Thank you. Thank you. Mr. McNeil. Thank you. May it please the court. Counsel. I want to first start with People v. Devin Chinzell. Not only in Jackson, Jackson in this court stated, if there's some credible evidence in the record that would reduce the crime of first-degree murder to involuntary manslaughter, an instruction should be given, emphasis on credible. People v. Devin Chinzell says the same thing. I'm not entirely sure, but I think that People v. Jackson even cites Devin Chinzell on that sentence. I'm not entirely sure. I don't have the case law in front of me, but I briefly remember that. This is important because it's an abusive discretion standard. If it's not an abusive discretion standard, why give the trial court the discretion to reject involuntary or any lesser-included instruction at all, if all that's needed is any scintilla of evidence to support that? Here, the evidence simply wasn't credible. Defendant attempts to bring McCoy's statement around to being consistent with the gun accidentally going off or not pointing it. Mrs. McCoy's testimony was that she didn't see the shooting. She saw a flash. Of course, her credibility was called into question when she did say her previous statement to the police was that it didn't look like the defendant was pointing the gun at the group or pointing at anyone in particular. Looking at her testimony, though, it's clear that she didn't even see the shooting. She heard it. She didn't see it. At most, the judge would dismiss her testimony based on obvious credibility issues. Of course, there were multiple other witnesses to the shooting that supported the state's argument that the defendant pointed the gun at the group. And fired, shot the victim in the back. Of course, the most important testimony would be the defendant's itself. His admissions on his own testimony was that he did point the gun at the group the victim was in. He did feel threatened by the victim. He was trying to defend his family. The victim was the only one refusing his commands not to move. The victim was advancing towards him aggressively, putting gloves on, which also threatened the defendant. And finally, the victim made a sudden movement directly before he shot him. Of course, all of these things amount to either a justified or unjustified self-defense claim. Well, I think Mr. Rahim makes a really good point with regard to the evidence of how the victim was shot. But isn't that really a question for the jury that the jury never got to answer? Well, I would argue that this court in Jackson, there must be... The evidence can be slight to require an instruction. But it has to be credible. And here, the defendant argued about people versus Everett. The instruction must be given even if the other evidence is inconsistent with the defendant's own testimony. There, I think, the defendant's own testimony didn't contradict itself. It was the other evidence that was contradicting the defendant's own testimony. Here, the defendant basically lays out a claim of he felt threatened and then throws in, well, I also didn't mean to fire the weapon. If all that's needed in this situation is for a defendant to say that, then there's never going to be another case again where if the firing of the weapon isn't in dispute, that the defendant's not just going to say, I didn't mean to, I didn't shoot the gun, it accidentally went off. Of course, this is going to lead to, from a policy standpoint, to defendants rejecting their counsel's recommendation and even encouraging them to testify falsely to any state of mind and all state of minds. They don't have to be consistent with the story, so they're going to go through the checklist, lack of premeditation, felt threatened, so self-defense, the gun accidentally went off, or any other state of mind, to make sure that all options are checked off for instructions of lesser than the first degree murder. The facts of People v. Steven Shinzo, there are three medical experts in that case, and the applicable medical testimony was that the victim died from a rare phenomenon. That's what all three medical experts testified consistently to, one for the defendant, two for the state. Also, there was the fact that the defendant didn't use a gun or any weapon at all. This was a fist fight. So, of course, any reasonable, or not any reasonable, obviously the first trial court didn't, but it was reasonable to assume that involuntary manslaughter was a possibility there. Here, all we have is defendants' word or claim that not only was he threatened and just so happened to shoot the one guy that was advancing towards him directly after he made some sudden movement, allegedly, but that also the gun happened to accidentally go off at that exact moment. To say it was a flinch, the state couldn't find, and I don't think the defendant cited any case that said a defendant claiming to flinch and requiring an involuntary manslaughter instruction. There are cases where a gun accidentally goes off. Those are distinguishable because there's evidence of either intoxication or a struggle, which would involve a gun going off or dropping a gun. Here, there's no evidence whatsoever of any malfunction or effect of gun. There's no struggle. There's nobody bumping into defendant or him dropping the gun. It's basically him covering all bases saying, well, I didn't mean to shoot the gun in case you don't believe my self-defense story. In these situations, that's why exactly in this court, in People v. Grimes and People v. Jackson both, there must be something more than the defendant's claim. All the other evidence in this case goes against the defendant's claim, even the rest of the defendant's own testimony. At worst, it was a first-degree murder where he's running away and the defendant shoots him at best. It's a self-defense situation, but at any rate, just the defendant's claim that the gun accidentally went off with no other evidence supporting that is not enough to get over that minimal threshold. It is a minimal threshold. It has to be slight evidence, but it has to be credible. Like I said, even People v. DiVincenzo, which the defendant relies on multiple times, uses that language, that there must be some credible evidence. Again, to say otherwise, why even have the abuse of discretion standard on review at all? Why give the trial courts any discretion to reject or approve any instruction if there's even an utterance of any factual reference in the case? A recent case in the First District, People v. Castillo, distinguished DiVincenzo. There, the defendant testified and he denied kicking the victim in the head. Multiple other witnesses testified that the defendant did kick the person in the head, and it was pretty clear from the facts that he did. The appellate court rejected the defendant's testimony, basically, stating that the defendant kicking the victim in the head took it out of the realm of recklessness, so they didn't need an involuntary manslaughter instruction. But the important part of that is that the defendant, just like in this case, actually just like in Jackson, made an outlandish claim that is completely contradictory to the rest of the evidence, and the reviewing court said the trial court didn't abuse its discretion in rejecting that outlandish claim, presumably because, as this court says in Grimes, this could force the trial court to include unlimited instructions, just as I stated in my policy warnings. Well, isn't this exactly one of the fears of concealed carry opponents, that somebody will think that a gun is useful for self-defense, and in a situation, and maybe this doesn't apply to this defendant, because we don't know much about him until sentencing, but I've never faced an angry group before. I did purposely take the weapon, and I thought displaying it might cause people to be more cautious, and instead I'm confronted by this guy that walks in front of me, and I'll add a fact, I didn't have my finger on the trigger. And the guy makes a sudden movement, and the gun goes off. And I already told you that I did point it in the direction of the group, but I didn't think that I was going to hit anybody, I didn't think that I was going to shoot anybody, and I certainly wasn't shooting at an individual. Testifies like that. Is that outlandish? The idea being that you start with the premise that a citizen believes it's reasonable to take a gun to this event, because it will help provide some safety. That would make you think about self-defense, but why doesn't it also make you think about the alternative? That he does something that an experienced person with a gun might not have done. That is, fires it off because of being startled. Again, in this case, there's no evidence of any inexperience or experience or anything else with the gun. Right, there's an absence of it. He's a citizen that makes the choice to bring a gun. And he does say, I want to defend my family. And there's an admission that he did have his finger on the trigger at least some point. He did admit that during cross-examination. And he admitted that he pointed it in the general direction of the group. I just think that the door this would open would be, again, from a policy standpoint, there would be no detriment to stating that the gun accidentally went off in every murder case, because that would, even if it's inconsistent with your self-defense story. Not every. You shot the guy three times in the head. Okay. It would be a little harder to argue. But I understand your floodgates theory. And this would be detrimental to a defendant as well, because the defense counsel could have very valid reasons for recommending that the defendant doesn't testify. And in this case, a defendant could testify just to make sure that he gets the backdoor involuntary manslaughter instruction or self-defense instruction or anything else. There are multiple policy reasons why I think this court stated that there must be at least some credible evidence for the trial court to warrant that involuntary manslaughter instruction. At the very least, it wasn't an abuse of discretion here. I think the trial court interpreted it exactly like I did after reading the fact that the defendant's main gist was that he was threatened trying to protect his family in a self-defense situation, however justified that would be. So here, at the very least, the trial court did not abuse his discretion in rejecting this instruction. Are there no more questions?  Thanks. Thank you. Rebuttal? May it please the Court. The State's slippery slope argument, here I refer to it as the opening the floodgates, it belies a lack of trust in the capabilities of our juries, our criminal juries, which form the bedrock of the constitutional guarantee of the right to a fair trial. This is a jury instruction case. It's not a reasonable doubt case. We're simply talking about whether the question should have been submitted to the jury at all. If this court's decision opens the floodgates to defense counsel breaking their ethical duties and telling their clients to lie to the court and leads to their clients lying to the court, we have to have faith that our juries can tell that they are lying, as we do all of the rest of the time. It's not a particularly persuasive argument to me for this court. Maybe I misunderstood. I thought he was saying it would be difficult because the defense attorney might not want the guy to testify, but the guy would choose to testify because he wanted to insert that in there. And the result of that, Your Honor, would be a defendant saying, I didn't mean to fire the gun. But it wouldn't be the same as the counsel telling him to get a lie. I did not mean to insult the State in that I may have misunderstood the argument. I may have too. In any case, Your Honor, the outcome of a wave of defendants falsely testifying that they did not mean to fire their weapons surely would be not found credible by the juries in those cases if in fact they did actually mean to fire the guns. And as Your Honor noted, if you fire the gun more than once, that immediately takes it out of the realm of recklessness because it couldn't have been an accident if you kept firing, kept pulling that trigger. It really only applies to the cases where there's one shot fired. And that's the case like in People v. Wright, the Illinois Supreme Court case, that upheld a lower court's finding that a woman who accidentally shot her daughter with a gun, firing one time, acted recklessly. And that was involuntary manslaughter. She testified she didn't mean to fire the gun, she didn't mean to point it at her daughter, and that was the outcome there. People v. Tarpley that I mentioned earlier was a decision by this court. Same type of thing. A woman and her husband were in an argument. She accused him of being next door, I assume visiting the woman of that house. She pulled the gun on him. Apparently she did this all the time. She took a step forward, and the gun went off. And again, she testified one time. She again testified that she didn't mean to shoot him, and the trial court found her guilty of involuntary manslaughter on the basis of recklessness. The same exact thing happened in People v. Everett, the Illinois Supreme Court case. There was one shot fired, and that decision dealt with self-defense. That was the holding of that case. But the facts were that he bumped his shoulder into a wall, and the gun went off one time. These are the types of cases we're talking about here. We're not talking about cases like Jackson, where someone fired seven times and just kept shooting. That's a whole different set of circumstances. And we were able to find one case that did discuss a defendant flinching and accidentally firing a gun. That was the Delaware case, Zabrowski v. State. Obviously it's not binding, it's persuasive precedent, but it's not the first time a court has dealt with this issue. But this court should look at its own decision in People v. Presley. A bit of an older case now, Presley. That talks about the standard that I've discussed here, which is that any evidence that a jury could reasonably find persuasive, that's the holding of Presley. And Presley looks specifically at the Illinois Supreme Court decision in Wright, where the woman accidentally shot her daughter, and distinguishes that. Because in Presley, the man beat the victim for 15 to 20 minutes and then threw him in a river. And it's hard to say after you do that that you were acting recklessly, because the circumstances show that you weren't. Unlike in Wright, where there was just one shot, and all the testimony was that, even though they were arguing, the testimony was that she accidentally fired the gun. We're just talking about a jury instruction. It's not opening the floodgates to let all the criminals out of prison. For these reasons, this court should reverse the lower court and remain for a new trial. Thank you. Thank you. We'll take this matter under advisement and stand in recess until further call.